IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

IN RE: DONALD W. DAWES and  )
PHYLLIS C. DAWES,     )
            )
     Debtors.   )
            )
UNITED STATES OF AMERICA, )
            )
     Appellant,  )
            )
   v.       )   Case No.08-1054-WEB
            )   Bankr. No. 06-11237-12
EDWARD J. NAZAR, *Trustee*; and )
DONALD W. DAWES,    )
PHYLLIS C. DAWES,     )
            )
     Appellees.  )

## Memorandum and Order

   This is an interlocutory appeal by the United States from a ruling by the Bankruptcy

Court.  The ruling concerns a construction of 11 U.S.C. § 1222(a)(2)(A), which carves out an

exception to the general rule that a Chapter 12 plan must provide for full payment of priority

claims, including administrative expenses in the form of taxes incurred by the bankruptcy estate.

Section 1222(a)(2)(A) provides that a claim owed to the Government "that arises as a result of

the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming

operation" shall be treated as an unsecured claim that is not entitled to priority under § 507,

provided the debtor obtains a discharge.  The Bankruptcy Court found this section applied to

capital gains taxes owed by the debtors arising from a post-petition sale of real property used by

the debtors for farming.  As a result, the Court denied the United States' objection to the debtors'

Chapter 12 plan treating the capital gain taxes as a general unsecured claim.

I.  Background.

The debtors first came to the attention of the United States in the 1980s, when they failed to file income tax returns.  In 1988, they were convicted of willfully failing to file income tax returns for the tax years 1981, 1982, and 1983.  Doc. 2-6 at 91, United States v. Dawes, 88-10002 (D. Kan. 1989), aff. 874 F.2d 746 (10th Cir. 1989).  Each of them spent seven months in federal prison.  Doc. 3 at 2.  Additionally, they failed to pay income taxes for 1982, 1983, 1984, 1986, 1988, and 1990.  Doc. 2-6 at 91.  They were assessed a tax liability of $142,007.  Doc. 3 at 2.  The Dawes did not pay the tax, and by 2006 the debt had grown to $1,747,841.53.  Doc. 3 at 2.

In 2003, the United States filed suit against the Dawes to reduce their income tax liabilities to judgment, to set aside conveyances of real property, to obtain a determination that Plainsman Property Trust was a nominee of the Dawes, and to foreclose federal tax liens against nine real properties.  United States v. Dawes, 03-1132-JTM (D.Kan. 2003), aff'd. 161 Fed.Appx. 742 (10th Cir. 2005).  Judge Marten found that in 1985 and 1986, after the federal tax liens had been assessed, the Dawes began moving their property into three trusts in which close family members or the Dawes served as trustees or agents.  The court found the Dawes created the Plainsman Property Company to avoid tax judgments.  Judge Marten found that the Dawes' conveyance of nine parcels of land to the Plainsman Property Company must be set aside as fraudulent, and that the property was subject to the federal tax liens.  Id., 03-1132-JTM (D.Kan. 2003), Doc. 33, filed Sept. 21, 2004.  The District Court approved an order for the sale of the nine parcels of property.

The Dawes filed for bankruptcy on July 14, 2006.  On October 11, 2007, the IRS filed the

Report of Sale for the nine parcels of property.  The IRS sold all but 80 acres of the Dawes' real estate.  (Doc. 3, p. 2).

II. <u>Case History</u>.

On July 14, 2006, Debtors filed for bankruptcy relief under Chapter 7. Doc. 2-2 at 2.  The Chapter 7 case was dismissed on August 2, 2006, but was reopened, and on August 17, 2006, was converted to Chapter 12.  Doc. 2-2 at 3-4.  The IRS, which holds a judgment against the Debtors for $1,541,604.08, plus interest, is the principal creditor.

On October 23, 2006, the IRS obtained relief from the automatic stay to enforce its judgment as to eight parcels of real property titled in the name of Plainsman Trust. Doc. 2-2 at 7.  On November 13, 2006, Debtors filed their Chapter 12 plan.  Doc. 2-2 at 7, Doc. 2-3.  The plan proposed to pay that portion of the IRS claim secured by the eight parcels by surrender of the property to the IRS.  Doc. 2-3 at 4.  The plan further provided that "pursuant to 11 U.S.C. § 1222(a)(2)(A), all claims of the IRS or the Kansas Department of Revenue that arise post-petition as a result of the sale, transfer, exchange, or other disposition of the [nine parcels] shall be treated as a general unsecured claim not entitled to priority under § 507."  Doc. 2-3 at 6.  The United States objected to confirmation of the plan in numerous respects, including its treatment of taxes arising from the post-petition sale.  Doc. 2-3 at 15.  The parties did not immediately address this objection, proceeding instead with the sale of the property.  The eight parcels were sold, and the sale proceeds exceeded $900,000.  Both parties agree that the sale will result in the debtors owing a significant capital gains tax, although the exact amount was not specified in the pleadings.

On August 9, 2007, Debtors filed a motion for partial summary judgment, asking the

3

court to find that "11 U.S.C. § 1222(a)(2)(A) allows the Debtors to provide in their Chapter 12 plan that the IRS' post-petition capital gains tax claim incurred as a result of the IRS' forced sale of Debtors' real estate is an unsecured claim." Doc. 2-2 at 17.  On September 24, 2007, the United States filed a cross-Motion for Partial Summary Judgment asking the court to find that § 1222(a)(2)(A) does not apply to capital gains from post-petition sales.  Doc. 2-2 at 20.  The Bankruptcy Court granted the Debtors' Motion, noting that the purpose of Chapter 12 is to allow a farmer to reorganize and the purpose of § 1222 was to remove a major impediment to reorganization.  Doc. 1-2.  The court found that the Chapter 12 post-petition capital gains taxes qualified as "administrative expenses" entitled to priority because they were incurred by the estate.  As such, it found the tax liability was within the § 1222(a)(2)(A) exception.  The court concluded that the Debtors may treat the claim as an unsecured claim not entitled to priority under § 507, limited by the condition that such treatment is allowed only if the Debtors receive a discharge.  Doc. 1-2.

III.  Standard of Review

"On appeal from the bankruptcy court, the district court sits as an appellate court." In re Barber, 191 B.R. 879, 882 (D.Kan. 1996).  A district court reviews a bankruptcy court's factual findings for clear error, and reviews its conclusions of law de novo.  Zions First Nat'l Bank, N.A. v. Christiansen Brother, Inc., 66 F.3d 1560, 1563 (10th Cir. 1995).  The district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Fed. R. Bankr. P. 8013.

IV.  Summary of Arguments.

The United States contends that Section 1222(a) does not apply to any post-petition

4

claims, including taxes.  It argues that Chapter 12 plans deal only with the treatment of pre-petition claims and are only binding upon creditors holding such claims.  Appellant contends this view is confirmed by reading sections 1226(b)(1), 1222, and 1227(a) together. Moreover, it argues that the Bankruptcy Court erred in finding that the capital gain taxes were "incurred by the estate."  Appellant contends that in a Chapter 12 proceeding, the estate is not a separate taxable entity and the debtor remains personally responsible for the tax.  This is in contrast to Chapter 7 and 11 cases, appellant says, where the tax code provides that the bankruptcy estate shall be treated as a separate taxable entity.  Only in the latter cases may the tax be said to be incurred by the estate, appellant contends, and only then may the taxes be treated as an administrative expense of the estate.  *Citing* 26 U.S.C. §§ 1398, 1399.  Appellant thus argues it was error to treat the taxes as administrative expenses, and error to find that they fell within the exception of section 1222(a)(2)(A).

The Debtors' response urges the court to follow several recent decisions finding that post-petition capital gain taxes fall under § 1222(a)(2)(A), including the only decision by a district court to address the issue.  Debtors argue that In re Knudsen, 389 B.R. 643 (N.D.Iowa 2008), is instructive as it addresses the precise issue and relies extensively on Judge Somers' analysis.  Debtors argue the plain language of section 1222(a)(2)(A) does not restrict its applicability to pre-petition sales and that the legislative history behind the section supports the Bankruptcy Court's interpretation.  They argue that appellant's interpretation, on the other hand, is flawed because it requires discriminatory treatment of similarly situated farmers, protecting only those who had the foresight to liquidate property before filing for bankruptcy protection. The debtors say post-petition tax claims have administrative priority status under section 503(b)

– as the IRS has argued in other cases – and that such taxes are directly covered by §

1222(a)(2)(A).  The Debtors have filed notice of supplemental authority, providing the court

with two additional cases supporting their position.

V.  Discussion

a.  Chapter 12 Bankruptcy and 11 U.S.C. § 1222(a)(2)(A)

Chapter 12 Bankruptcy was created for family farmers with regular annual income.  11

U.S.C. § 101(19).  Chapter 12 allows eligible farmer debtors to adjust their debts while they

remain in control and possession of their property, and they maintain the ability to operate the

farm.  8 Collier on Bankruptcy § 1200.01[2], p. 1200-4 (15th ed. Rev. 2006), 11 U.S.C. §

1227(b).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 was enacted on

April 20, 2005.  Pub. L. No. 109-8, 119 Stat. 23.  The BAPCPA modified 11 U.S.C. §

1222(a)(2)(A) to read as follows: "The plan shall provide for the full payment, in deferred case

payments, of all claims entitled to priority under section 507, unless the claim is a claim owed to

a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of

any farm asset used in the debtor's farming operation, in which case the claim shall be treated as

an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated

in such manner only if the debtor receives a discharge."  The new section 1222 created an

exception by stripping priority from the claims of a "governmental unit" that "arise" from a

transaction involving any farm asset used in the debtors farming operation, if the debtor receives

a discharge.  In re Hall, 393 B.R. 857, 862 (D.Ariz. 2008).  In adopting this section, Congress

was concerned that if the debtor/farmer could not pay the I.R.S. in full, the I.R.S. was likely to

veto the plan, and the farmer would likely lose the farm.  *See* 145 Cong. Rec. S750-02, S764,

(statement of Sen. Grassley on S.260).[1]  Clearly, section 1222(a)(2)(A) is a remedial measure

designed to help family farmers reorganize and continue in operation by lessening the tax

consequences of selling or transferring farm property.

Section 507 lists the expenses and claims that have priority in bankruptcy.  Included are

administrative expenses allowed under 11 U.S.C. § 503(b), including fees and charges assessed

against the estate under chapter 123 of title 28.  11 U.S.C. § 507(a)(2).  Administrative expenses

are generally post-petition claims, and are assigned priority to "encourage[] the necessary parties

to undertake the collection and distribution of the assets of the estate so as to generate proceeds

to distribute to pre-existing creditors.  8 Collier on Bankruptcy § 507.02[1][b], p. 507-16 (15th

ed. Rev. 2006).  Administrative expenses are the costs of preserving the estate, and include taxes

incurred by the estate, other than taxes entitled to priority under section 507(a)(8).  Collier, 507-

28.

b.  Application of 11 U.S.C. § 1222(a) to post-petition taxes.

---

[1]Senator Grassley's comments were regarding a previous amendment, "Safety 2000",
which was considered in 1999.  The amendment did not pass at that time, but the exact language
was adopted in the BAPCPA in 2005: "Safety 2000" also helps farmers to reorganize by keeping
the tax collectors at bay. Under current law, farmers often face a crushing tax liability if they
need to sell livestock or land in order to reorganize their business affairs. According to Joe
Peiffer, a bankruptcy lawyer from Hiawatha, Iowa, who represents many family farmers, high
taxes have caused farmers to lose their farms. Under the bankruptcy code, the I.R.S. must be paid
in full for any tax liabilities generated during a bankruptcy reorganization. If the farmer can't pay
the I.R.S. in full, then he can't keep his farm. This isn't sound policy. Why should the I.R.S. be
allowed to veto a farmer's reorganization plan? " Safety 2000" takes this power away from the
I.R.S. by reducing the priority of taxes during proceedings. This will free up capital for
investment in the farm, and help farmers stay in the business of farming."  145 Cong. Rec. S750-
02, S764, 1999 WL 20426 (Jan. 20, 1999).

The United States argues 11 U.S.C. § 1222(a) does not apply to claims for post-petition taxes.  Section 1222 provides that a plan shall provide for the full payment of all claims entitled to priority under 11 U.S.C. § 507.  Under section 507, there are two categories of taxes entitled to priority.  Section 507(a)(8) gives priority status to certain pre-petition taxes.  11 U.S.C. § 507(a)(8); In re Schilke, 2008 WL 4224279 (D.Neb. 2008).  The taxes at issue here are post-petition, therefore section 507(a)(8) is inapplicable.  Section 507(a)(2) gives priority status to administrative expenses allowed under 11 U.S.C. 503(b).  Section 503(b) contains an extensive list of allowed administrative expenses, including taxes incurred by the estate: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including any tax incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title."  11 U.S.C. § 503(b)(1)(B)(i).

The IRS argues that section 507 is limited to pre-petition claims of creditors.  The IRS cites no authority for this assertion, and as discussed above, only section 507(a)(8) address pre-petition claims. Taxes that are incurred by the estate for the sale of property post-petition can clearly qualify as an administrative expense pursuant to section 503(b).  Therefore, they are a priority claim pursuant to section 507(a)(2).

    c.  Creditor Status

The United States argues that Chapter 12 plans are only binding upon "creditors," not upon holders of post-petition claims, and it says "the binding effect of the plan can extend no further upon the United States."  It points out that a "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the

8

debtor; an entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or an entity that has a community claim."  11 U.S.C. § 101(10).

Section 1222(a)(2)(A) does not mention "creditors."  Rather, the statute specifically applies to "claim[s] owed to a government unit...".  11 U.S. C. § 1222(a)(2)(A).  The term "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.  11 U.S.C. § 101(5)(A).  In the case at hand, the IRS, a government unit, has a right to payment for capital gain taxes arising from the sale of the Debtors' farm property.  It thus has a claim against the debtors.  Section 1222, by its terms, is not limited to "creditors."  Moreover, the court notes that appellant's suggested construction of the statute is inconsistent with Congress's apparent intent in adopting that section: ""[C]ongress has chosen to recognize the uncollectibility of the majority of the income taxes occasioned by the sale of the farm debtor's assets used in the farming operation.  The 2005 Amendments provide financially strapped family farmers the opportunity to downsize and restructure their farming operations without the necessity of paying the taxes in full as required under old Chapter 12." 7 *W. Norton,  Bankr. L. & Prac.* 3d § 130:6 (2009).  The statute by its terms is not limited to "creditors," and it therefore cannot be read to apply only to pre-petition claims.  Section 1222 addresses claims owed to a government unit, which includes the tax claim held by the IRS.

d.  11 U.S.C. § § 1226 and 1227

Appellant argues that post-petition claims in Chapter 12 cases are governed by 11 U.S.C. § 1226, and that when read with 11 U.S.C. § 1227 and 1222(a)(2)(A), the various sections

9

confirm that holders of post-petition claims are not bound by Chapter 12 plans.  Appellant
further argues that these statutes show section that 1222(a)(2)(A) does not apply to taxes arising
as a result of the sale of property of the estate.

The applicable sections of the statutes read as follows:  "Before or at the time of each
payment to creditors under the plan, there shall be paid any unpaid claim of the kind specified in
section 507(a)(2) of this title."  11 U.S.C. § 1226(b)(1).  "The provisions of a confirmed plan
bind the debtor, each creditor, each equity security holder, and each general partner in the debtor,
whether or not the claim of such creditor, such equity security holder, or such general partner in
the debtor is provided for by the plan, and whether or not such creditor, such equity security
holder, or such general partner in the debtor has objected to, has accepted, or has rejected the
plan."  11 U.S.C. § 1227(a).  In sum, then, the confirmed plan binds the debtor and all the
creditors.  Furthermore, confirmation obligates the trustee to distribute all payments to creditors
in accordance with the plan, and vests in the debtors all the rights in any post-petition acquired
property.  In re Plata, 958 F.2d 918, 922 (9th Cir. 1992).

As discussed above, section 507 lists the expenses and claims that have priority in
bankruptcy.  Administrative expenses allowed under section 503(b) and any fees and charges
assessed against the estate have priority.  11 U.S.C. § 507(a)(2).  Section 1226 sets out that the
administrative expenses should be paid before payment to creditors of the confirmed plan.  The
court has already determined that post-petition taxes incurred by the estate qualify as
administrative expenses pursuant to section 503(b), and are ordinarily a priority claim pursuant
to section 507(a)(2).

The United States' argument that the foregoing sections necessarily preclude post-

petition claims fails to take into consideration the specific language of section 1222(a)(2)(A). This section specifically exempts from priority status a claim owed to a governmental unit that arises as a result of the sale of any farm asset, in which case the claim should be treated as unsecured.  The claim of the IRS in this instance is a claim owed to a governmental unit, and it is the result of the sale of a farm asset, the farming property.  The IRS' reliance on section 1226 and 1227 does not overcome the straightforward and specific language of § 1222(a)(2)(A).

e.  "Incurred by the estate."

The United States, relying on the "separate entity rules," argues that the post-petition income taxes are not administrative expenses because the taxes were not incurred by the Chapter 12 estate.  It argues that the tax code does not consider a Chapter 12 bankruptcy estate to be a separately taxable entity, and therefore the debtors, not the estate, incurred the tax.

The Bankruptcy court referred to the legislative history of § 503(b)(1)(B)(i) in determining that the capital gains taxes are in fact administrative expenses.  Specifically, the court referenced the Senate Report:

> In general, administrative expenses include taxes which the trustee *incurs in administering the debtor's estate*, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate *during the case*. Interest on tax liabilities and certain tax penalties incurred by the trustee are also included in this first priority."  S. Rep. No. 95-989, 95th Cong., 2d Sess. 66 (1978)(italics in original opinion).

Judge Somers also relied on the Report of the Recommendations of the Senate Finance Committee regarding administrative expenses: "Administrative expenses - Taxes incurred *during the administration of the estate* share the first priority given to administrative expenses generally."  S. Rep. No. 95-1106, 95th cong., 2d Sess. 13 (1978) as reported by the Senate Judiciary Committee and the Senate Finance Committee)(italics in original opinion).

11

The United States has raised the "separate entities" argument in other cases.  In the Schilke case, the court rejected the argument, finding that a separate taxable estate was not required for post-petition taxes to be treated as administrative expenses subject to section 1222(a)(2)(A).  In re Schilke, 2008 WL 4224279, at 4 (D.Neb. 2008).  In doing so, the court considered the clear Congressional purpose of Chapter 12 and §1222(a)(2)(A), and found that treating post-petition taxes as administrative expenses meets the remedial purpose of providing relief to family farmers.  Id.

The District Court in Arizona also considered this issue and recognized that Chapter 12 bankruptcy is treated differently than a Chapter 7 or Chapter 11.  In re Hall, 393 B.R. 857, 861 (D.Ariz. 2008).  It acknowledged that under the tax code, there is no separate taxable entity created when an individual commences a case under Chapter 12, as there may be in a Chapter 7 or Chapter 11.  But the court said it would be error to accept "the IRS's characterization of the pertinent provisions as federal income tax provisions found in the Bankruptcy Code, when they are properly understood as bankruptcy provisions to be construed in accordance with the Bankruptcy Code and bankruptcy policy to promote the effective reorganization of family farming operations."  Id.. at 863 (quoting In re Knudson, 389 B.R. 643, 680-81 (N.D. Iowa 2008).  The court examined the purpose of Chapter 12 and determined that the taxes generated from the sale of assets used in the farming operation must be considered administrative expenses to allow the debtor to receive the benefits of section 1222(a)(2)(A).  Id at 863-864.

The District Court in In re Knudsen also found that taxes from sales of property after the filing of the petition may be treated as administrative expenses under 11 U.S.C. § 503(b)(1)(B)(i).  389 B.R. 643, 670 (N.D.Iowa, 2008).  Knudsen relied in part on a Chapter 11

12

bankruptcy case where a tax claim against a corporation was split between pre-petition and post-petition taxes.  In that case, the court rejected the separate entity argument, finding that a tax "incurred by the estate" referred to a tax that was incurred post-petition during the existence of the bankruptcy estate.  In re L.J. O'Neill Shoe Co., 64 F.3d 1146, 1149 (8th Cir. 1995).  The Eighth Circuit said in that case it was not treating the debtor and the estate as two separate entities.  Rather, the tax was being imposed against a single corporate entity, but part of the tax was allocated as a claim against the estate and was treated as an administrative expense, in keeping with the bankruptcy laws determining priority of claims.  Id. at 1152.  The Knudson court likewise adopted this reasoning, saying that taxes may be "incurred by the estate" in a Chapter 12 because under the Bankruptcy Code that phrase refers to taxes incurred post-petition, during the existence of the bankruptcy estate, and the priority and treatment of such claims is determined under the policies in the Bankruptcy Code.

The Knudsen court went on to note that nothing in the plain language of § 1222(a)(2)(A) restricts its applicability to pre-petition sales.  Id. at 675.  The court examined the language of section 1222, recognizing that the "debtor's farming operation" refers to the farming operation under the reorganization plan.  Id.  Since reorganization occurs both before and after the filing of the Chapter 12 petition, it said, section 1222 must apply to transactions that occurred both before and after the filing of the petition.  Id.  The court stated that any ambiguity about a bankruptcy statute should be construed in favor of the debtor.  Id. at 677.  In doing so, the court should "give farmers a fighting chance" to reorganize their debts based on farming and business factors, rather than on the potential adverse tax consequences.  Id.  In sum, Knudson reviewed the legislative history and case law and concluded that taxes "incurred by the estate" in § 503(b)(1)(B)(i) refers

13

to when the tax liability is incurred rather than to the existence of the estate as a separate taxable

entity.  Id. at 680.

After reviewing the cases that have addressed this issue – including Schilke, Hall, and

Knudson – the court finds that the decision by Judge Somers correctly applied the law and the

prevailing view of section 1222(a)(2)(A).  See also In re Gartner, 2008 WL 5401665 (Bkrtcy. D.

Neb. 2008).  In construing the provisions of the code, the court must consider the purpose of

Chapter 12 bankruptcy, which is to allow the debtors to pay their debts while they maintain

control of their property and attempt to continue the farm business.  The Bankruptcy Court

correctly observed that reorganization in a Chapter 12 applies to transactions that occur before

and after the filing of the petition.  Treating capital gain taxes incurred post-petition as an

administrative expense of the estate – and consequently as an unsecured claim – is consistent

with the language of section 1222(a)(2)(A) and accomplishes the statute's clear remedial

purpose.  The court concludes that the Bankruptcy Court correctly rejected the objection of the

IRS, and correctly granted the debtors' motion for summary judgment as to the construction of

section 1222(a)(2)(A).

IV.  Conclusion

The judgment of the Bankruptcy Court is AFFIRMED.  IT IS SO ORDERED this 12th

day of March, 2009, at Wichita, Ks.


s/Wesley E. Brown
Wesley E. Brown
United States District Judge

14